## SHAPIRO, BERNSTEIN & CO., Inc., v. BRYAN et al.

### No. 74.

Circuit Court of Appeals, Second Circuit.

Dec. 1, 1941.

John Schulman and Hays, St. John, Abramson & Schulman, all of New York City (Milton Sargoy, of New York City, of counsel), for appellants.

Leo J. Rosett and House, Grossman, Vorhaus & Hemley, all of New York City (Joseph Fischer, of New York City, of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

L. HAND, Circuit Judge.

The defendants, Bryan and Fisher, appeal from a judgment which declared void their renewal under § 23 of the Copyright Act, 17 U.S.C.A. § 23, of the copyright in a song, written and composed by them; which enjoined them from infring-ing the renewed copyright of the plaintiff in the same song; and which dismissed their counterclaim. (Fisher's company is also an appellant, but its interest may be ignored.) The dispute centers upon who had the right to renew the copyright of the song whose words Bryan wrote, and whose music Fisher composed, and which one, Maurice Shapiro, the plaintiff's predecessor in title, copyrighted on October 18, 1910. The copyright would have expired on October 18, 1938, and any application for its renewal under § 23 had to be made within the year beginning October 19, 1937; consequently the plaintiff filed an application for renewal on October 19th, as owner of the copyright; and Bryan and Fisher filed applications—one for the words and the other for the music—on the same day. The plaintiff claims the right of renewal as "an employer for whom such work was made for hire;" Bryan and Fisher claim it as "authors." The appeal involves only two issues; whether the words and music were in fact composed while Bryan and Fisher were working under contracts with Shapiro —Bryan's, dated September 10, 1910 and Fisher's, dated August 25, 1909—and whether those contracts made Shapiro an "employer for whom" the song was "made for hire." The judge held with the plaintiff on both points; we shall first consider his finding of fact as to the time of composition of the song, remembering that we must accept it unless it was "clearly erroneous."

There was written evidence under the hands of Bryan and Fisher themselves proving that the song had not been written or composed before September 10, 1910, the date of Bryan's contract, although each swore definitely to a much earlier date. Shapiro introduced a clause into each contract in which the employee set out all compositions of his that had not up to that time been published, and expressly declared that there were no others; Bryan mentioned twelve; Fisher mentioned none; Shapiro inquired of all publishers in New York and found no other songs composed by either. That Bryan understood precisely the effect of this clause is proved from his writing a qualifying phrase into it with his own hand: "excepting such others as can be ascertained by inquiry of the different publishers." One or both might of course have forgotten the song in issue when he made his contract, but when he left Shapiro's employ each knew that Shapiro had copyrighted it under a claim of right to do so, because each signed an assignment which

included it among other songs as already published. It is not reasonable to believe that they should have treated it as falling within their contracts, both on entering and on leaving Shapiro's employ if they had composed it beforehand; and this is further confirmed because in every case in which Shapiro copyrighted a song of theirs which did not fall within the contracts, he got a separate assignment from them. Indeed that was Bryan's general practice with publishers. Against these admissions and the oral testimony of the plaintiff's witnesses, the judge was free to discredit the testimony of Bryan and Fisher as to events more than thirty years before, especially since the attempted corroboration of that testimony proved most unconvincing.

The case therefore turned upon the effect of the contracts. Bryan's provides that he "does engage his exclusive services to and hereby enters the employ of, the said Shapiro * * * to use his best skill and effort in the composition of popular songs." He will "deliver the manuscript" to Shapiro, "write verses and choruses to suit any title that * * * Shapiro may suggest," change manuscripts, collaborate in composing, popularize songs and advance his own songs "as well as all other lyrics published by the said Shapiro." All songs composed by him are to be Shapiro's and he will compose for no other publisher, or render services of any kind to any other publisher, nor will he let his name be published as author of any song "not now published" save of those excepted. For all these "services" he is to be paid in royalties upon any sales of his compositions by Shapiro, but is in any event to receive an advance of $35 a week, which shall be charged against the royalties, if any. Fisher's contract was differently worded but not different in substance. He agrees "to enter into the employ of the said Shapiro * * * generally as a song writer * * * during which term" (a year) he will "render his services exclusively to * * * Shapiro * * * and * * * deliver * * * all * * * musical compositions which he may write or compose * * * in whole or in part, all of which shall immediately when composed be the property of the said Shapiro." He agrees to deliver "at least twenty four (24) complete songs" in the year for Shapiro and to compose for no one else, and not to let his name appear elsewhere as a composer. To the extent of three songs a month, he agrees to write words for any music, or to write music for any words. Shapiro agrees to "employ" him and pay him in royalties guaranteed to be $3,000, payable $50 a week in advance, which, like Bryan's "hire," is to be charged against the royalties, if any.

Section 23 starts by fixing the duration of the original copyright, and then grants the right of renewal in two provisos. The first of these covers those cases in which the "proprietor" of the copyright (obviously there must always have been an original copyright) is not the author of the work, and it is divided into four classes. The first class provides for "posthumous" works, i. e. those on which the original copyright has been taken out by someone to whom the literary property passed before publication. The second provides for "composite works," by which we understand those to which a number of authors have contributed distinguishable parts, which they have not however "separately registered," a situation at that time provided for by the second proviso though now changed—but which they have allowed a "proprietor" to include in one copyright. The third class is not entirely plain and it is not indeed necessary for us to define its scope. Coupled as it is with the fourth—which alone is here important—it may include "works" which are composed by persons who may be related to a corporation neither as employees "for hire," nor as assignors or licensors. (Members of a corporation producing a common "work" by mutual contributions, fused so as to be indistinguishable, may conceivably be one example.) The first proviso merely provides exceptions to the second, which grants the right of renewal in all other cases to the "author" in the colloquial sense provided he survives the copyright; otherwise to his widow, children, next of kin or executors.

The defendants seem to suppose that the definition of "author" in § 62, 17 U.S.C.A. § 62, which declares that it "shall include an employer in the case of works made for hire" has some importance in construing § 23. We cannot see that it has. Certainly it can have none in the first proviso because the word does not appear in it. If we suppose that it defines "author" in the second proviso, it adds nothing to what has been already provided for in the fourth class of the first proviso, except the absurd possibility that if the work is "done for hire," the proprietor who then has the right of renewal must survive the copyright, or it will pass to his widow, children, next of

kin or executors. The limitation which the second proviso imposes upon the author's power to dispose of the right of renewal during his life was so clearly intended to protect widows and children from the supposed improvidence of authors in the colloquial sense, that we need not hesitate to hold that in § 23 the first proviso overrides the second even if the definition in § 62 must be incorporated. How we should have to decide the effect of that definition upon § 24, 17 U.S.C.A. § 24, if the proprietor did not survive the copyright, we need not say; in Tobani v. Carl Fischer, Inc., 2 Cir., 98 F.2d 57, we did not observe the curious possibility we have just mentioned and it does not appear from the report whether the employer, Carl Fischer, had died.

But all this is really irrelevant because, regardless of § 62, the turning point is whether the song, composed as it was while Bryan and Fisher were employed under the contracts we have described, was a "work made for hire." They argue that that phrase does not include works of which employees are the real authors, but only those to which they make some ancillary contribution to the "employer" who is the chief author. It is of course true that since the right of renewal is quite separate from the original copyright, circumstances which might be enough to imply its transfer—e. g. working for wages—might not be enough to imply a transfer of the right of renewal. We assume arguendo for instance that the assignee of the literary property in an unpublished work, who later takes out the copyright, like the assignee of the copyright itself, does not get the right of renewal; it might have been reasonable therefore to save out of the transfer by contract of employment cases where the employee was the real author, as here. But not only do the words suggest no such distinction, but the kind of contribution by the employee to which the phrase would then be limited, would not support the issue of an original copyright to the employee; he would not be an "author," at most he would be a "co-author." The simple meaning of the words is that when the employer has become the proprietor of the original copyright because it was made by an employee "for hire," the right of renewal goes with it, unlike an assignment. It is idle to try to speculate why Congress should have so provided in order. to create out of whole cloth an exception of which there is not the slightest intimation in the statute. The "work" intended is clearly any "work" which, but for the employment, the employee could have himself copyrighted; not a work in which his rights would have given him only a joint interest in the copyright. The defendants do not suggest that any court has taken or even intimated any acceptance of their view; it seems to us. the merest invention, fabricated in the teeth of the statute.

Judgment affirmed.