## VON TILZER et al. v. JERRY VOGEL MUSIC CO., Inc., et al.

District Court, S. D. New York.

Sept. 14, 1943.

Phillips, Nizer, Benjamin & Krim and Louis Nizer, all of New York City, for plaintiff Harry Von Tilzer Music Pub. Co.

Goldie & Gumm and William V. Goldie, all of New York City, for plaintiff Harry Von Tilzer.

O'Brien, Driscoll & Raftery, Arthur F. Driscoll, and Milton M. Rosenbloom, all of New York City, for defendant Jerry Vogel Music Co., Inc.

Frank P. Greenberg, of New York City, for Jack Mahoney.

BONDY, District Judge.

The complaint alleges the infringement by the defendant, Jerry Vogel Music Company, Inc., of the copyright of seven songs. The complaint was not served on any of the defendants other than this corporation and Jack Mahoney.

The first cause of action involves the song "Down On The Farm". The music was composed by the plaintiff, Harry Von Tilzer. The lyrics were written either by Raymond A. Browne, as is claimed by the defendant corporation, or partly by Browne and partly by Von Tilzer, as is claimed by the plaintiff.

The defendant corporation published and sold the song, claiming the right to do so by an assignment of the renewal rights to it by the widow of Browne.

Harry Von Tilzer assigned to the plaintiff corporation the right to copyright and publish the song and agreed to make proper application for the renewal of the copyright in his name for the benefit of the plaintiff.

July 26, 1902, the plaintiff corporation copyrighted the song. July 16, 1930, within one year before the expiration of the copyright, Von Tilzer applied for renewal and received a renewal certificate which he assigned to the plaintiff corporation.

The original certificate of registration, the renewal certificate and the sheet music sold by the plaintiff corporation stated that the lyrics were written by Raymond A. Browne and the music was composed by Harry Von Tilzer.

It appears that Browne collaborated with Von Tilzer in the writing of the lyrics for the music composed by Von Tilzer. At the time, Browne worked regularly from 9 A.M. to about 5 or 6 P.M. for the plaintiff corporation in its place of business at a fixed salary.

There is no evidence that Browne claimed or received any royalty or any compensation other than his salary from July 26, 1902, when the song was copyrighted and published, to May 9, 1923, when he died, or that his widow, Jennie A. Browne Tafuri, ever claimed any renewal rights or any royalties or made any claim against the plaintiffs before about August 8, 1940, when this action was begun.

The court concludes that Browne wrote the lyrics of the song for his employer in the course of his employment by

the plaintiff corporation, and that whether or not he was the author of a part or all the words, the plaintiff alone as his employer for hire was entitled to the copyright and to the renewal thereof. Section 62 of the Copyright Act, 17 U.S.C.A. § 62; Shapiro, Bernstein & Co. v. Bryan, 2 Cir., 123 F.2d 697; Tobani v. Carl Fisher, Inc., 2 Cir., 98 F.2d 57, 59, certiorari denied 305 U.S. 650, 59 S.Ct. 243, 83 L.Ed. 420; United States Ozone Co. v. United States Ozone Co. of America, 7 Cir., 62 F.2d 881, 887.

Because the plaintiff corporation was entitled to all copyrights and renewal rights, the widow could not give nor the defendant corporation receive from her any right to publish the song nor any right to any money collected by the plaintiff corporation on the theory that since the renewal it held part of the proceeds received by it in trust for the widow.

The plaintiff corporation accordingly is entitled to judgment enjoining the infringement of the song by the defendant corporation and to an accounting and to judgment dismissing the counterclaim.

■ Jerry Vogel has been discredited by the fact that he made irreconcilably contradictory statements under oath with reference to other songs as well as this as he himself admitted. In the song which he published he stated it was copyrighted in 1930 by Raymond A. Browne and assigned in 1938 to the Jerry Vogel Music Co., Inc., although Browne did not copyright the song and Vogel knew that Browne died before 1930.

The second cause of action relates to the song "I Want a Girl Just Like the Girl Who Married Dear Old Dad". The music was composed by Harry Von Tilzer. The words were written by Dillon or by Dillon in collaboration with Harry Von Tilzer. The song was copyrighted by the plaintiff corporation May 1, 1911.

The defendant corporation claims the right to publish the song under an assignment of his renewal rights by Dillon.

On August 4, 1911, Dillon, in consideration of its promise to pay one cent for every printed copy sold, assigned all his interest in the song and his renewal rights to the plaintiff corporation by a written instrument, which, however, was not filed in the office of Registrar of Copyrights until the 2d day of May, 1938, when Harry Von Tilzer, as composer, filed an application for renewal and assigned the renewed term to the plaintiff corporation.

On May 4, 1938, Dillon filed an application for the renewal term. On June 15, 1938, he assigned his renewal right to Jerry Vogel. Thereafter he also assigned to the defendant corporation all claims he had against plaintiff by reason of the publication of the song by it.

The certificate of registration, the renewal certificate, as well as all the sheet music of the songs sold by the plaintiff corporation stated that the words were written by Dillon.

■ Since Dillon was living on the first day of the twenty-eighth year of the original term, the 1911 assignment by him to the plaintiff corporation vested in it all his renewal rights and gave it the exclusive right to publish the song not only during the original term but also during the renewed term. The application for the renewal filed by Dillon May 4, 1938, after he had assigned all his rights to the renewal term to the plaintiff corporation, accordingly did not vest any renewal rights in his assignee, M. Witmark & Sons v. Fred Fisher Music Co., 2 Cir., 125 F.2d 949, affirmed by United States Supreme Court April 5, 1943, 318 U.S. 643, 63 S.Ct. 773, and the publication of the song by defendant constituted infringement of plaintiff's copyright.

■ Though the assignment to the plaintiff corporation was not recorded within three months of its execution, it was good as against the recorded assignment to Vogel, because he did not pay anything for the assignment and therefore was not a purchaser for valuable consideration and without notice, the mere promise to pay consideration not constituting a valuable consideration within the recording act. See Rossiter v. Vogel, 2 Cir., 134 F.2d 908, 911.

The defendant corporation counterclaims one cent for every copy of the song sold by the plaintiff corporation, including copies in folio, and demands judgment for an accounting of all printed copies sold during the original and renewal terms, as well as an injunction to prevent plaintiff from slandering defendant's title.

The assignment of the renewal rights was made by Dillon to Jerry Vogel, who is not a defendant, and not to the defendant corporation.

■ In any case, the plaintiff's failure to pay royalties on folios was not a breach of its contract with Dillon to pay royalties of one cent on each and every printed copy sold.

Twelve years after the song was published folios, including this song, were published by the plaintiff corporation. The president of a large music publishing company testified that royalties are never paid on music published in folio, that the words "printed copy" as used in the music publishing industry apply to sheet music only and do not include copy in folio.

■ A former president of the Song Writers Protective Association, who is a well known and successful composer and song writer, testified that since the organization of the Association in 1931 there has been paid to composers for publishing their songs in folios from $5 to $25, irrespective of the number of copies of the folios sold, and that no publisher would eliminate the possibility of selling a single sheet of music for 25¢ or 50¢ by publishing a book containing many songs in folio for the same price simply to avoid the payment of a royalty. This testimony was given not to vary the terms of the written contract but to explain the meaning of words "every printed copy sold" used technically in it. See Mutual Chemical Co. v. Marden, Orth & Hastings Co., 235 N.Y. 145, 151, 139 N.E. 221. A folio in evidence, published by the plaintiff corporation and including this song, states that it is an artist's complimentary copy not for sale, given with the compliments of the publisher.

■ Von Tilzer, as composer of the music, and the plaintiff corporation, as assignee of the writer of the lyrics, having had the exclusive right to renew, the plaintiff corporation is entitled to judgment enjoining infringement by the defendant. The defendant, however, is entitled to an accounting as to the number of printed copies of the song not in folios sold by the plaintiff since September 23, 1934, the recovery of the royalties which became due before September 23, 1934 being barred by the statute of limitations. Section 48, New York Civil Practice Act; Brick v. Cohn-Hall-Marx Co., 276 N.Y. 259, 11 N. E.2d 902, 114 A.L.R. 521; Keys v. Leopold, 241 N.Y. 189, 149 N.E. 828.

The third cause of action involves the song "All Alone". The music was composed by Harry Von Tilzer and the lyrics were written by Dillon or by Dillon in collaboration with Harry Von Tilzer.

On February 6, 1911, Dillon assigned to the plaintiff corporation all his interest in the song together with all his renewal rights.

On February 10, 1911, the plaintiff corporation copyrighted the song. On February 10, 1938, Harry Von Tilzer renewed the copyright and assigned it to the plaintiff corporation.

On March 21, 1938, Dillon applied for renewal and on June 15, 1938, he assigned to Vogel all his rights to renewal and on September 3, 1940, all claims he might have against the publishing company by reason of the publication of the song.

In all other respects the facts in this case are similar to those alleged in the second cause of action and are governed by the same principles.

The plaintiff corporation accordingly is entitled to judgment enjoining infringement by the defendant corporation and the defendant corporation to an accounting as to the number of printed copies sold by plaintiff corporation after September 23, 1934.

The fourth cause of action involves the song "Summertime". Von Tilzer composed the music of the song and the defendant, Jack Mahoney, a part of the lyrics.

Harry Von Tilzer assigned to the publishing company his right to copyright and publish the song and agreed to make proper application for the renewal of the said copyright in his own name for the benefit of the publishing company.

On the 12th of November, 1907, Jack Mahoney assigned to the plaintiff corporation his interest in the song, including his copy and renewal rights. The assignment states that he has no right, title, interest or royalty claim in the song.

On January 13, 1908, the plaintiff corporation copyrighted the song. On November 7, 1935, Von Tilzer, the composer of the music, renewed the copyright and assigned all his rights to the copyright and the renewal thereof to the plaintiff corporation. On or about the 9th day of December, 1935, Jack Mahoney filed an application for the renewal of the copyright and received a certificate of registration. On January 3, 1936, the defendant corporation filed a renewal certificate in the

name of Mahoney. Mahoney insists that this was unauthorized, and he and his wife therefore executed a second assignment of all their rights and interest in the song and the copyright and the renewal term to Von Tilzer. The assignment stated that Von Tilzer had the sole right to the renewal. Von Tilzer immediately assigned the same to the plaintiff corporation which recorded the assignment on the 17th day of February, 1938.

The defendant corporation introduced in evidence two alleged assignments of renewal rights by Mahoney to Jerry Vogel individually, one dated February 4, 1936, assigning the song "Summertime" and the other dated April 2, 1936, assigning the song "Sometime", procured on the representation that the first was lost.

Vogel made contradictory statements as to which song was assigned first. He admitted that the staple had been removed from the first assignment which now had the word "Summertime" on the schedule annexed to the assignment.

Contrary to the testimony and contention of Jerry Vogel, the defendant Mahoney testified that he never assigned any interest in the song "Summertime" to the defendant and that the plaintiff corporation is the sole owner of the song and that he never had any property right in it; that he does not claim to be the author of the words; that he was an employee for hire and that his part of the song was written for the plaintiff in the course of his employment by it and that he advised Vogel that he had no rights to the song; that he had very little to do with it and that he was not going to make any claim of authorship, since he never was the author.

■ Since the employer and not the employee is considered the author and entitled to the renewal rights, even if the alleged assignment from Mahoney to the defendant had been made, it would not aid the defendant corporation. Mahoney, an employee for hire, had no rights that could be assigned to the defendant corporation in any event. See Shapiro, Bernstein & Co. v. Bryan, 2 Cir., 123 F.2d 697. The plaintiff accordingly is entitled to judgment demanded in the complaint.

The fifth cause of action alleges the infringement of the copyright of the song "I'll Lend You Everything I've Got Except My Wife". The music was composed by Harry Von Tilzer. The lyrics were written by Jean Havez. On April 8, 1910, he assigned his rights, including renewal rights, to the plaintiff corporation which copyrighted the song May 2, 1910. Jean Havez died April 3, 1937. On September 29, 1937, Von Tilzer renewed the copyright. Defendant claims under a renewal certificate which it procured in the name of Cecelia Sedgewick, dated March 21, 1938. The assignment dated July 19, 1938, after the original copyright had expired, was from Ebba Havez Sedgewick to Jerry Vogel individually and not to the defendant corporation.

■ The defendant has not sustained the burden of proving that it has an assignment from the person entitled to renew.

Vogel testified that he believed Jean Havez married twice, that he did not know whether Ebba Havez Sedgewick mentioned in the assignment was married to the author Jean Havez at the time of his death. He never met her. Nor did he ever make any effort to find out if his assignor was the widow of Jean Havez. He never paid anything for the assignment. He filed the renewal certificate before he had the assignment, which is dated after the original term had expired.

■ A renewal of a copyright by a person not entitled thereto is void and can not be cured by subsequent ratification by the person allegedly entitled to renew. See Tobani v. Carl Fisher, Inc., supra.

The song published by the defendant corporation falsely stated that the copyright was taken out by Jean Havez Estate.

Since the renewal by the plaintiff Harry Von Tilzer, the composer of the music, was valid and the defendant corporation has not sustained its burden of proving that the person under whom it claims was entitled to renew or had any interest in the song, plaintiff is entitled to the judgment demanded and defendant's counterclaim must be denied.

The sixth cause of action is for the infringement of the song entitled "When the Harvest Days Are Over, Jessie Dear". The music was composed by Harry Von Tilzer. The song was copyrighted on June 2, 1900. The copyright was renewed on September 29, 1927, by Von Tilzer.

The defendant claims under an assignment of the copyright renewal dated October 30, 1935, from David Graham, Norma

Graham Byers and Amelia Graham Dibbles, the next of kin of Howard Graham, to Jerry Vogel individually. There, however, is a conflict in the testimony as to whether it was from the next of kin of Howard Graham, who is credited on the copyright records with the authorship of the lyrics.

Von Tilzer and Sterling, who collaborated with Von Tilzer in composing the lyrics, testified that the Howard Graham from whom Von Tilzer bought at least the title of the song was not the brother of Charles Graham, the well-known composer. One of the children of this Charles Graham, Mrs. Byers, who is now a woman about 52 years old and who was only about 10 years of age in 1900, testified that she knew that the entire lyrics were by her uncle Howard Graham. A search of the birth records by the Registrar of Vital Statistics for the City and County of Philadelphia, where she swore she was born, failed to reveal any record of her birth. It does not appear that Howard Graham or any widow or next of kin made any claim to any renewal rights or any other claim before this suit was brought.

 Defendant has not sustained the burden of proving it holds an assignment from a person authorized to make it. See Schellberg v. Empringham, D.C., 36 F.2d 991.

Vogel admitted that the testimony he gave as to whether he ever met Mrs. Byers and as to whether he knew that the Howard Graham through whom he claimed was married, was incorrect. He also admitted that the copyright notice on the song "When the Harvest Days Are Over, Jessie Dear", which stated that the song was copyrighted by Howard Graham Estate, was incorrect.

Since the term of the copyright was renewed by the composers and the persons from whom defendant took the assignment were not satisfactorily proved to be the next of kin of Howard Graham, the author of the title or the words of the song, and the defendant corporation published the song, plaintiff is entitled to judgment.

The authorities holding that a renewal of one co-author, here Von Tilzer, as composer of the music, inures to the benefit of the other co-author, are inapplicable since the defendant did not prove that it was the assignee of the co-author or his legal representative.

The seventh cause of action is based upon the alleged infringement of the copyright of the song registered May 12, 1909, entitled "I Love, I Love, I Love My Wife But Oh You Kid" by the publication and sale of the song "I Love My Wife But Oh You Kid" by the defendant corporation and upon unfair competition by it attempting to palm off the song published by it as the work of the plaintiff. Von Tilzer composed the music. He contends that he also wrote the lyrics of the song and that he agreed to give Jimmy Lucas credit as the writer of the song and to pay him royalties because Lucas suggested the title of the song and promised "to plug" the song. In July, 1909, Jimmy Lucas assigned to the plaintiff corporation the rights and interest that he had in the song. On March 20, 1937, Harry Von Tilzer filed a notice of renewal and transferred his rights in the renewal term to the plaintiff corporation.

Vogel received from Lucas publishing and renewal rights to the song "I Love, I Love, I Love My Wife But Oh You Kid" March 10, 1938, and from Armstrong and Clark publishing rights to the song "I Love My Wife But Oh You Kid", written by them April 13, 1937. This song is entirely different from the song published by the plaintiff. Vogel never published the plaintiff's song.

 The original copyright certificate, the renewal certificate and the published music stated that the words of the plaintiff's song were by Jimmy Lucas. There is no presumption of authorship with respect to the original copyright certificate because this song was copyrighted before the effective date of the Copyright Act of July 1, 1909, 17 U.S.C.A. § 1 et seq. Though plaintiffs may not be estopped by the statement in the original copyright certificate (M. Witmark & Sons v. Calloway, D.C., 22 F.2d 412), they are estopped from showing that Lucas was not the author by the statement that the words were written by Lucas which appear on the renewal certificate and the published music. Oliver v. Saint Germain Foundation, D.C., 41 F. Supp. 296, 298.

 The assignment dated July 22, 1909, in which Lucas assigned all his right, title and interest in the song "I Love, I Love, I Love My Wife But Oh You Kid", however, did not expressly provide for the renewal of the copyright by the assignee in the author's name. The plain-

tiff corporation therefore did not have any right to apply for the renewal certificate in the name of Lucas. See Witmark case, M. Witmark & Sons v. Fred Fisher Music Co., D.C., 38 F.Supp. 72, 74, affirmed Circuit Court of Appeals, 2 Cir., 125 F.2d 949, and the Supreme Court, 318 U.S. 643, 63 S.Ct. 773. Von Tilzer, however, as the composer of the music was entitled to the renewal which he holds for the benefit of himself and Lucas or his assignee. See Marks Music Corp. v. Jerry Vogel Music Co., Inc., D.C., 47 F.Supp. 490, 491.

 The plaintiffs are not entitled to judgment on their claim of unfair competition. The evidence does not establish that the title of its song had come to signify the plaintiff's song in the public mind.

In the table of contents in copies of Von Tilzer's song folio, and in the list of his novelty songs printed on the back covers of sheet music, he entitles his song "I Love My Wife, But Oh You Kid" without using the words "I Love" three times. If the title of plaintiff's song had acquired a secondary significance in the public mind, it is strange that Von Tilzer himself published his own song under the title used by defendant corporation.

The defendants never having published or threatened to publish plaintiff's song, the complaint must be dismissed. The defendants are entitled to an accounting as to the proceeds of the sale of the song "I Love, I Love, I Love My Wife, But Oh You Kid" since the beginning of the renewal term.

To summarize: The plaintiff is entitled to the judgment in the first six causes of action and the defendant to an accounting in the second, third and seventh causes of action.