CADENCE INDUSTRIES CORPORA-
TION and Magazine Management
Co., Inc., Plaintiffs,

v.

Barbara RINGER, Register of Copyrights,
and the Copyright Office of the United
States, Defendants.

No. 76 Civ. 339 (WCC).

United States District Court,
S. D. New York.

March 13, 1978.

Kenyon & Kenyon Reilly Carr & Chapin, New York City, for plaintiffs; Charles R. Brainard, Stuart J. Sinder, New York City, of counsel.

Robert B. Fiske, Jr., U. S. Atty., for the Southern District of New York, New York City, for defendants; John M. O'Connor, Asst. U. S. Atty., Richard E. Glasgow, Asst. Gen. Counsel, Washington, D. C., of counsel.

## MEMORANDUM AND ORDER

CONNER, District Judge:

This action to compel the Register of Copyrights and the Copyright Office to register plaintiffs' claims to renewal and extension of the copyright in each of a series of comic books published by plaintiffs' predecessors, is the culmination of a ten-year struggle.

The controversy centers upon a question of first impression concerning the construction of the copyright renewal statute, 17 U.S.C. § 24,[1] specifically, whether a copyright proprietor may, in its renewal application, identify the copyrighted work as both a "periodical, cyclopedic or other composite work" and as a "work made for hire," or whether these categories are mutually exclusive and contradictory and, if so, whether the Register has the authority to refuse registration.

There being no dispute as to the controlling facts, the action was submitted for decision on a stipulation of facts and on legal memoranda.

1. Throughout this opinion, reference is made to the provisions of the Copyright Act of 1909, as amended, which was in effect throughout the ten-year history of this controversy and was still in effect at the time the main briefs of the parties were filed. As of January 1, 1978, a new Copyright Act became effective. However, the language of its renewal provision, Section 304, is identical with that of Section 24 of the prior Act in all of the respects discussed herein, except. that the renewal fee was increased from $4.00 to $6.00.

*The factual background*

The following brief factual summary, incorporating the Court's findings of fact, will suffice:

Beginning in 1940, the predecessors of the plaintiffs, a group of commonly owned and controlled corporations collectively known as the Marvel Comics Group (the "Group") published various periodical magazines, including comic books. Each comic book issue featured at least one fictitious cartoon character, but the issues frequently included material concerning characters featured in other publications of the Group. However, all of the writers, artists and editors involved in the creation of every issue were employees of one or more corporations in the Group.

The copyright in each issue was initially secured by publication with an appropriate copyright notice, and the claim to copyright was duly registered by the Copyright Office as a "periodical" in Class B, in the name of the publishing corporation as proprietor.

Beginning in September 1967 (within the last year of the respective 28-year terms of the original copyrights, as required by 17 U.S.C. § 24), the successor plaintiff filed an application for registration of its claim to renewal and extension of the copyright in each issue, the application being filed on the appropriate renewal application, Form R, identifying the renewal applicant as "Proprietor of copyright in a composite work made for hire," and being accompanied by the statutory fee of $4.00.

The Copyright Office rejected the application on the ground that the characterizations of the publication as a "composite work" and as a "work made for hire" were contradictory. The Office indicated that it would accept an application which identified the publication as either one or the other, but not both. It also indicated that it would accept two applications for each issue, one identifying the publication as a "composite work" and the other as a "work made for hire," provided each application was accompanied by a $4.00 fee. Plaintiffs offered to submit two such applications with a single $4.00 fee, but the Office insisted upon a $4.00 fee for each application.

After a lengthy exchange of correspondence, and at least one meeting between plaintiffs' counsel and officials of the office, without resolution of the controversy, on May 14, 1971 the Librarian of Congress wrote the President and asked that the Attorney General be directed to render an opinion on the question "whether the Register of Copyrights may refuse to make registration of a claim to renewal copyright when the application states that the claim is founded on two bases that the Register considers to be contradictory." The letter was accompanied by a memorandum prepared by the Copyright Office setting forth the relevant facts and summarizing the contentions of the parties.

Three years elapsed before the Attorney General on June 10, 1974 rendered a 16-page written opinion concluding that the categories "composite work" and "work made for hire" were mutually exclusive and that the Register of Copyrights had the authority to decline registration of a renewal claim asserting these inconsistent bases. The present action followed a year and a half later.

*The relevant statutes*

Under Section 24,[2] a copyright has an initial term of 28 years from the date of

---

**2.** 17 U.S.C. § 24 reads in pertinent part as follows:

"The copyright secured by this title shall endure for twenty-eight years from the date of first publication . . . : *Provided*, That in the case of any posthumous work or of any periodical, cyclopedic, or other composite work upon which the copyright was originally secured by the proprietor thereof, or of any work copyrighted by a corporate body (otherwise than as assignee or licensee of the individual author) or by an employer for whom such work is made for hire, the proprietor of such copyright shall be entitled to a renewal and extension of the copyright in such work . . . : *And provided further*, That in the case of any other copyrighted work, including a contribution by an individual author to a periodical or to a cyclopedic or other composite work, the author of such work [or his designated heirs or representatives] shall be entitled to a renewal . . . ."

first publication, and may be renewed for an additional term of 28 years, upon the application of specified persons. The first proviso of Section 24 permits renewal by a proprietor who initially copyrighted the work, provided the work falls within at least one of the following four categories:

(1) a posthumous work; [3]

(2) a periodical, cyclopedic or other composite work upon which the copyright was originally secured by the proprietor thereof;

(3) a work copyrighted by a corporate body (otherwise than as assignee or licensee of the individual author);

(4) a work copyrighted by an employer for whom such work is made for hire.

As to all other types of work, the second proviso of Section 24 permits renewal by the author or his designated heirs or representatives.[4]

None of the terms used in the first proviso is defined in the Copyright Act, although 17 U.S.C. § 26 defines "author" as including an employer in the case of a work made for hire.

■ In the case of a "work made for hire," only the employer or its successor may renew the copyright. *Shapiro, Bernstein & Co., Inc. v. Bryan*, 123 F.2d 697 (2d Cir. 1941). In the case of a "composite work," the second proviso of Section 24 specifically provides for renewal by the author or his successors, assuming, of course, that the author was not an employee and that his contribution is distinguishable from the rest.[5]

---

**3.** The Court of Appeals for the Second Circuit would apparently define a posthumous work as one which

1) was first published after the death of the author, and 2) on which the copyright was first assigned after the death of the author. *Bartok v. Boosey & Hawkes, Inc.*, 523 F.2d 941 (2d Cir. 1975). See Nimmer on Copyright, § 114.1.

**4.** The rationale of favoring authors over proprietors was explained in the House Report in connection with the recent revision of the Copyright Act:

"It not infrequently happens that the author sells his copyright outright to a publisher for a comparatively small sum. If the work proves to be a great success and lives beyond the term of twenty-eight years, your committee felt that it should be the exclusive right of the author to take the renewal term, and the law should be framed as is the existing law, so that he could not be deprived of that right." H.R.Rep.No. 2222, 60th Cong. 2d Sess. p. 14.

And in *White-Smith Music Publishing Co. v. Goff*, 187 F. 247, 251 (1st Cir. 1911), the Court stated:

"There are at least sentimental reasons for believing that Congress may have intended that the author, who according to tradition receives but little for his work, and afterwards sees large profits made out of it by publishers, should later in life be brought into his kingdom."

See also Nimmer on Copyright, § 113.

However, the author may assign the renewal right. *Fred Fisher Music Co. v. M. Witmark & Sons*, 318 U.S. 643, 63 S.Ct. 773, 87 L.Ed. 1055 (1943). Nimmer on Copyright, § 117.2.

**5.** In the Copyright Act of 1909, as originally worded, Section 23 (renumbered as Section 24 in Title 17, U.S.Code) permitted the author to renew the copyright in a contribution to a composite work only where he had separately registered a copyright on that contribution originally:

" * * * That in the case of any other copyrighted work, including a contribution by an individual author to a periodical or to a cyclopedic or other composite work when *such contribution has been separately registered*, the author . . . shall be entitled to a renewal . . . (Emphasis supplied)."

In 1940, this section was amended to eliminate the underlined clause, and thus at least literally permit renewal by authors whether or not the copyright in their contributions had been separately registered.

However, defendants state that "The law concerning the right to renew a contribution to a composite work that has not been separately registered is most unclear." Defendants' Brief, p. 14. And Nimmer agrees, stating

"It is undoubtedly correct when the individual contribution originally bears a separate copyright notice in the name of the author. Where this is not the case, however, it cannot be stated with certainty that the author has a right to claim renewal in the work even though he was never owner of record of the work in its original term of copyright." Nimmer on Copyright, § 114.2.

If authors who had not separately registered claims to copyright on their contributions to a composite work were not entitled to renewal, there could be no difference in consequences, whether or not the work was made for hire. In any event, it is settled that the renewal right is never extended to employees whose contributions were produced for hire. *Fred Fisher Music Co., Inc. v. Leo Feist, Inc.*, 55 F.Supp. 359 (S.D.N.Y.1944).

It was this important difference in consequences as between a "composite work" and a "work made for hire" which led the Attorney General to conclude that the two categories must be mutually exclusive.

*The contentions of the parties*

Plaintiffs' argument may be summarized as follows:

1. Plaintiffs have complied with every statutory requirement for renewal registration; they are the proprietors of the copyrights involved; they submitted applications for renewal which were complete and accurate in all respects and were accompanied by the statutory fee.

2. The works in question are concededly periodicals; the first category of the first proviso includes all periodicals, whether or not they are composite works. Moreover, they are composite works, since each includes the contributions of several authors. They are also works made for hire by employees of plaintiffs' predecessors.

3. There is no inconsistency in denominating the works in question as both "composite works" and "works made for hire." To designate them as only one or the other would be a misleading half truth.

4. The Copyright Office has no authority to rule on the validity of a claim to copyright or to renewal thereof. It merely registers the claim as a ministerial act. Even if the two categories named were mutually exclusive and inconsistent, the Register of Copyrights has no power to deny registration of the claim. *Bouve v. Twentieth Century-Fox Film Corp.,* 74 U.S. App.D.C. 271, 122 F.2d 51 (1941).

5. The mere fact that the Copyright Office may maintain separate indices for "composite works" and for "works made for hire" does not justify the requirement of two statutory fees. To facilitate such dual indexing, plaintiffs are willing to supply two applications, one designating the publication as a "composite work" and the other as a "work made for hire," provided only a single fee is paid for registering the two claims on a single work.

Defendants' arguments may be summarized as follows:

1. 17 U.S.C. § 207 expressly authorizes the Register of Copyrights to establish rules governing applications for copyright registration and renewal and to determine whether applications are entitled to registration.

2. Plaintiffs' designations of the publications as "composite works" and as "works made for hire" are contradictory, because, under 17 U.S.C. § 26, a "work made for hire" has but one "author"—the employer—who alone is entitled to renewal, while a composite work is made up of the distinguishable contributions of several authors, each of whom has the right of renewal as to his contribution. The significance of the difference between the two is emphasized in the present case by the fact that three of the contributors to the publications in question have filed applications for registration of their claim to renewal of the copyright in their respective contributions.

3. The refusal of the Copyright Office to register inconsistent claims is not arbitrary and capricious, but a proper exercise of the responsibility of the Office because, under 17 U.S.C. §§ 209, 210, a registration constitutes *prima facie* evidence of validity and of the facts recited. If the Office registers a claim which classifies a publication in the wrong category, it may discourage or prejudice the assertion of renewal rights by a party rightfully entitled thereto.

*The real issue*

■ The real dispute, of course, involves nothing more or less than whether plaintiffs must pay one $4.00 fee or two.

Plaintiffs' insistence that they cannot tell a half truth seems less than fully sincere in view of their repeatedly expressed willingness to tell *two* "half truths," one in each of two separate applications, provided they pay only one fee.

On the other hand, defendants' protestation that the acceptance of an application containing inconsistent assertions would compromise the integrity of the registration

system, is even less convincing in view of their stated willingness to accept inconsistent assertions made in separate, concurrently filed applications provided each is accompanied by the statutory fee. The integrity of the system would seem to be compromised. at least as much by requiring that the inconsistent statements be made in two separate applications, creating a hazard of concealment of the inconsistency, as by permitting both statements to be made in a single application, thereby assuring public notice of the inconsistency.

*Is there an inconsistency?*

On their face, the terms "composite work" and "work made for hire" would not appear to be mutually exclusive. A publication may obviously be a "composite work" in the ordinary sense that it consists of the distinguishable contributions of several authors, and at the same time a "work made for hire" in the ordinary sense that all of such contributors were employees of the publisher.

In *Shapiro, Bernstein & Co., Inc. v. Bryan, supra,* Judge Learned Hand gave such ordinary meaning to the term "composite works":

"The second provides for 'composite works,' by which we understand those to which a number of authors have contributed distinguishable parts, which they have not however 'separately registered,' * * *." 123 F.2d at 699.

and to the term "work made for hire":

"The simple meaning of the words is that when the employer has become the proprietor of the original copyright because it was made by an employee 'for hire,' the right of renewal goes with it, unlike an assignment.

* * * * * *

"The 'work' intended is clearly any 'work' which, but for the employment, the employee could have himself copyrighted." 123 F.2d at 700.

The Compendium of Copyright Practices, a practice manual prepared by the Copyright Office for the guidance of its examining staff, likewise gives the words "composite work" their customary meaning:

"Generally, a composite work is an original publication relating to a variety of subjects, to which a number of different authors have contributed distinguishable and separable selections." § 11.8.3.

* * * * * *

"A work by a single author, consisting of a collection of his writings, is not a composite work." § 11.8.3.II.b.

Defendants have cited no court decision or authority on copyright law, and we are aware of none, which has concluded or even suggested that the term "composite work" should or might be interpreted narrowly to exclude publications in which some or all of the contributions were made for hire. See, e. g., Nimmer on Copyright, §§ 13.3, 14.3, 43, 68.

Nor is there anything about the context in which the terms are used in the first proviso of Section 24 which suggests that they were intended to be treated as mutually exclusive. Defendants stress the fact that the four categories of work listed in the first proviso of Section 24 are separated by the disjunctive "or." However, it is obvious that not all of these categories are mutually exclusive; for example, where the work is created by employees of a corporation, the work could fall into both the third category, "work copyrighted by a corporate body (otherwise than as assignee or licensee . . . .")", and the fourth category, "work copyrighted by an employer for whom such work is made for hire."

To the extent that the legislative history sheds any light on the matter, it tends to undercut defendants' position. Although a renewal system was incorporated in the first Copyright Act of 1798, no provision was made for renewal by proprietors until 1909. In the House Report accompanying H.R. 28192, the Smoot-Currier bill, which eventually became the 1909 Copyright Act, the rationale for giving proprietors the right of renewal in certain situations was explained in this way:

"In the case of composite or cyclopedic works, to which a great many authors contribute for hire and upon which the copyright was originally secured by the proprietor of the work it was felt that the proprietor of such work should have the exclusive right to apply for the renewal term. In some cases the contributors to such a work might number hundreds and be scattered over the world, and it would be impossible for the proprietor of the work to secure their cooperation in applying for the renewal."

The reference to "composite . . . works to which a great many authors contribute for hire," appears clearly to indicate that the terms "composite work" and "work made for hire" are not used in an incompatible sense.

Defendant Ringer, the present Register of Copyrights, in *Renewal of Copyright,* her 1960 Legislative Study No. 31, commented on this portion of the 1909 House Report as follows:

"The legislative history shows that the determinative factors in a 'composite work' were:

1) A number of authors contributing copyrightable matter to a single work; and

2) An *employment or contractual arrangement* entitling the proprietor to secure copyright in the various contributions."

\*   \*   \*   \*   \*   \*

"The Committee reports on this final [Smoot-Currier] bill indicate a likelihood that the *legislators regarded a 'work made for hire' as a species of 'composite or cyclopedic work,'* and did not realize the breadth of the exception they were creating." Comm. on the Judiciary, 86th Cong., 2d Sess., Study on Renewal of Copyright 131, 139 (Comm. Print 1960) (emphasis added).

This indeed seems the most likely if not the only plausible meaning of the House Report.[6]

■ In her present role of Register of Copyrights, defendant Ringer has understandably adopted the position of the Copyright Office. Although the construction given a statute by the agency charged with its administration is entitled to substantial weight, *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965), the Copyright Office has repeatedly revealed its doubts about the proper interpretation of the statutory language in question, even after obtaining the opinion of the Attorney General. At page 17 of their Brief, defendants state:

"In an effort to resolve this matter without litigation and in accordance with its policy of resolving doubtful cases in favor of registration whenever possible, the Copyright Office informed the Plaintiffs that, as an exception in a limited number of cases, it may be arguable that renewal claims by the same claimant as 'proprietor of a copyright in a composite work' and 'proprietor of a copyright in a work made for hire' are not inconsistent and can therefore be made on the same application. However, the Copyright Office informed the Plaintiffs that to qualify for such exceptional treatment the Plaintiffs would be required to support each such claim with a statement that (1) all of the contributions in the work were made for hire, and (2) the work is 'composite' because disparate corporate employers-for-hire, each of whom would be

---

**6.** The Attorney General's Report, in footnote 8 on page 10, took a different position:

"Use of the words 'for hire' in the above quotation appears to have been a misnomer. The reason stated for giving the proprietor a right to renew in the case of a composite work—that it might not be possible to have the many contributors cooperate in applying for a renewal—is logical where those contributors were not employed on a salary basis and would therefore have had renewal rights as authors.

That reason is inappropriate if the contributors had worked for hire since they would then have no renewal rights and the proprietor alone would be entitled to renew."

However, it seems less likely that the author and readers of the House Report were sensitive to this rather abstruse nuance than that they understood the ordinary meaning of the words "composite works . . . to which a great many authors contribute for hire."

considered 'authors,' under section 26 accounted for the authorship of all of the various contributions. However, the Plaintiffs have refused to investigate the facts surrounding the authorship of these works sufficiently so as to enable them to proceed in this manner. Instead they have elected to pursue this litigation."

This is a clear concession that a composite work may consist entirely of contributions made for hire, at least where there were several different corporate employers-for-hire, as there were for many if not all of the publications here involved.

Plaintiffs' reluctance to undertake the extensive research necessary to enable them to represent that more than one corporate employer was responsible for the contributions to each of the publications is understandable, particularly when the problem could be resolved by the mere payment of a second $4.00 (or $6.00) renewal fee.

The reasoning employed in the opinion of the Attorney General in reaching the conclusion that the terms "composite work" and "work made for hire" are inconsistent—that in the latter case the proprietor has the right of renewal while in the former the author has—is really a *non sequitur.*

As noted above, when the terms are accorded their ordinary meaning, a "composite work" can be a "work made for hire" provided all of the distinguishable contributions were made by employees of the publisher. In that case the proprietor would have all the renewal rights and the authors (in the colloquial sense) and their successors would have none. On the other hand, if the "composite work" includes the contributions of both employees and non-employees, the proprietor would have renewal rights to all portions of the whole except the identifiable contributions of non-employees, as to which the authors or their successors would have the renewal rights, at least if the copyright thereon had been separately registered.[7] There is no apparent inconsistency in this construction.

Defendants further argue that because the term "composite work" is defined in their Compendium of Copyright Practice to exclude a compilation of the works of a single author, and because 17 U.S.C. § 26 provides that " . . . the word 'author' shall include an employer in the case of works made for hire," a collection of works made for hire for a single employer cannot be a composite work.

However, like Judge Learned Hand in *Shapiro, Bernstein & Co. v. Bryan, supra,* 123 F.2d at 699, we "cannot see" that the definition of "author" in Section 26 has anything to do with the construction of the first proviso in Section 24, "because the word does not appear in it."

Moreover, the Compendium expressly states at page 11–16 that

"The term 'author,' for renewal purposes, refers to the individual who personally wrote or created 'renewable matter,' in the work.

\* \* \* \* \* \*

"The term 'author' does not include employers for hire, publishers \* \* \* or any other impersonal entity."

For all the reasons stated, the Court concludes that the terms "composite works" and "works made for hire" are not inconsistent. The Court therefore need not consider the question whether defendants have the authority to reject an application containing inconsistent statements. Suffice it merely to say that defendants' conclusion that they must reject plaintiffs' renewal applications because of the *prima facie* presumption of validity and of the facts recited in a registration appears unjustified in view of the statement in *Epoch Producing Corp. v. Killiam Shows, Inc.,* 522 F.2d 737 (2d Cir. 1975), *cert. denied,* 424 U.S. 955, 96 S.Ct. 1429, 47 L.Ed.2d 360 (1976), that certificates of renewal, unlike original registrations, are not accorded *prima facie* effect.

It is undisputed that the Copyright Office has neither the facilities nor the authority to rule upon the factual basis of applications for registration or renewal, and

---

7. See note 5, *supra.*

that where an application is fair upon its face, the Office cannot refuse to perform the "ministerial duty" of registration "imposed upon [it] by the law." *Bouve v. Twentieth Century-Fox Film Corp., supra,* 74 U.S.App.D.C. 271, 122 F.2d at 56.

Defendants will therefore be ordered to register plaintiffs' claims for renewal describing plaintiffs as "proprietor of copyright in a composite work made for hire" upon payment of the single statutory fee in effect as of the time the respective renewal applications were filed.

Settle judgment order on notice.