**Mary K. GIBRAN and William Saxe as Administrators *c.t.a.* of the Estate of Kahlil Gibran, and Mary K. Gibran, Plaintiffs,**

v.

**ALFRED A. KNOPF, Incorporated, Defendant,**

**The NATIONAL COMMITTEE OF GIBRAN et al., Interpleaded Defendants.**

United States District Court
S. D. New York.
July 29, 1957.

Blum, Jolles, Gruber, Szabad & Gersen, New York City, for plaintiffs. Irving M. Gruber and Leanora S. Gruber, New York City, of counsel.

Stern & Reubens, New York City, for defendant, Harry Buchman and Richard E. Coven, New York City, of counsel.

George G. Shiya, New York City, for interpleaded defendants. Ralph L. Knisley, New York City, of counsel.

WEINFELD, District Judge.

The basic issue to be decided in this case is who is entitled to receive the royalties which have accrued, and which are to accrue, upon the renewal copyrights of "The Prophet" and four other books by Kahlil Gibran, the noted author.[1] The determination of this issue involves (1) the construction of the renewal section of the Copyright Act, 17 U.S.C. § 24, and (2) the will of the author.

Gibran died in April, 1931. He left no widow or children surviving him. His sole surviving next of kin was his sister, the individual plaintiff in this action. Gibran drafted his own will without the aid of legal advice. No executor was named. The will was duly admitted to probate in May, 1931 and shortly thereafter letters of administration c. t. a. were issued by the Surrogate's Court, New York County, to Mary K. Gibran, his sister, and William Saxe, who are the co-plaintiffs in this action. The letters of administration c. t. a. have not been revoked.

The will contains the following provision: "The royalties on my copyrights, which copyrights I understand can be extended upon request by my heirs for an additional period of twenty-eight years after my death, are to go to my home town", elsewhere referred to in the will as "Bechari, Republic of Lebanon".

The defendant, the National Committee of Gibran, was organized by the town of Bechari for the purpose of receiving royalties payable to it under the will. The defendant publisher has paid all royalties under the original copyright which accrued after the death of Gibran to the Committee and its predecessor. These were paid following the construction of the will by the Surrogate's Court, New York County, that "the gift of the royalties on the copyrights contained in the fourth paragraph of the said last will and testament carries with it the gift of the copyrights to the town of Bechari". No issue exists as to the payments so made under the original copyrights. But controversy does exist with respect to the renewal copyrights.[2]

The governing statute[3] which vests the privilege of renewal of copyrights in specified designees in order of priority, insofar as pertinent, provides: "§ 24. Duration; renewal and extension. The copyright secured by this title shall endure for twenty-eight years from the date of first publication * * * [and] the author of such work, if still living, or the widow, widower, or children of the author, if the author be not living, or if such author, widow, widower, or children be not living, then the author's executors, or in the absence of a will, his next-of-kin, shall be entitled to a renewal and extension of the copyright in such work for a further term of twenty-eight years when application for such renewal and extension shall have been made to the copyright office and duly

---

1. The original copyrights were registered in the name of Gibran as follows: "The Madman" on September 28, 1918; "The Forerunner" on September 15, 1920; "The Prophet" on September 28, 1923; "Sand & Foam" on October 5, 1926; and "Jesus, Son of Man" on October 12, 1928.

2. The publisher of the books, Alfred A. Knopf, Inc., was originally named as a

defendant. Under permission granted by this Court it has paid into the Court Registry accrued royalties upon the renewal copyrights up to October 31, 1956 to await final determination of this action. Upon such payment it was discharged from all liability in this action with respect to such royalties.

3. 17 U.S.C. § 24.

registered therein within one year prior to the expiration of the original term of the copyright: * * * ". Thus, under the above statutory scheme, the renewal right remains, first, with the author if he be living within the 28th year of the original term; second, if he be not living, it passes to his wife and children;[4] third, if none of the latter be living, to his "executor"; and fourth, "in the absence of a will" to his next of kin. This general scheme of succession to the right of renewal must be considered together with § 28 of the Copyright Act which provides: "Copyrights secured under this title * * * may be bequeathed by will".

As already noted, Gibran did not name an executor in his will. Accordingly, in the 28th year of the respective original copyrights, both the plaintiff administrators c. t. a. and the individual plaintiff Gibran, the author's sole next of kin, duly filed applications for renewals of the copyrights of the five works and duplicate certificates of copyright registration were issued to them respectively. In so renewing the copyrights they apparently acted in mutual self-interest to avoid a lapse of the renewal rights, whether ultimately the benefits thereof were to accrue to the next of kin or to the distributee, if any, under the will.

Since in the renewal years Gibran was not living and had left no widow or children, we are here concerned only with that part of the statute which provides that in such event " * * * then the author's executors, or in the absence of a will, his next-of-kin, shall be entitled to a renewal and extension of the copyright * * * ".

■ The individual plaintiff, the sister, contends that since no executor was named in the will, the right of renewal passed to her as the sole surviving next of kin, and she is entitled to all the royalties thereunder. Thus the issue is posed, whether, under the statutory scheme where an author has left a will but named no executor, in consequence of which an administrator c. t. a. was appointed who is still authorized to function as such, the administrator c. t. a. is entitled to exercise the right of renewal prior to the next of kin.[5]

■ I hold that although the statute refers to "the author's executors", an administrator c. t. a. appointed to enforce and administer the provisions of an author's will which has been admitted to probate, stands in the shoes of an executor and as such is entitled to exercise the right of renewal of the copyright.

While the legislative history of the Copyright Act sheds little, if any, light on the precise issue, it does reflect a general purpose and intent insofar as the renewal copyright privilege is concerned.

■ The House committee report (also adopted as the Senate committee report) which accompanied the renewal section prior to its enactment by the Congress shows that its purposes were first, to protect the author against his own improvident conduct in surrendering renewal rights during the original term; second, to set up a statutory scheme of priority in the renewal rights for the benefit of those naturally dependent upon, and properly expectant of, the author's bounty; and third, to permit the author who had no wife or children to bequeath by will the right to apply for renewal.[6]

■ To construe "executors" as used in the statute in the very strict and

---

4. DeSylva v. Ballentine, 351 U.S. 570, 576 S.Ct. 974, 100 L.Ed. 1415.

5. The fact that a judicial settlement was had in 1934 of what the administrators c. t. a. termed their final account does not render them functus officio. The decree is conclusive only as to those matters embraced within it. The administrators c. t. a. continue in office with respect to assets not listed in the account and which may thereafter be realized. Surrogate's Court Act, N.Y., § 274; In re Hubbell's Will, 302 N.Y. 246, 253, 97 N.E.2d 888, 891, 47 A.L.R.2d 176; Joseph v. Herzig, 198 N.Y. 456, 92 N.E. 103.

6. H.R.Rep. No. 2222, 60th Cong., 2d Sess., pp. 14–15; adopted as the report of the Senate Committee on Patents, Sen.Rep. No. 1108, 60th Cong., 2d Sess.

literal manner urged by the sister would defeat the purpose and intent of Congress to permit an author to bequeath the renewal rights. Indeed, such a construction would yield to the "tyranny of words",[7] especially so since the difference between an executor and an administrator c. t. a. is largely one in name only.[8] The Supreme Court has made it crystal clear that in interpreting particular sections of a statute, the entire statute should be examined so as not to frustrate the congressional purpose by slavish literal interpretation of a particular clause or section.[9] The literal application of words as "normally" used may frequently defeat the purpose of a statute, which must be read as a whole and not in fragmentation in order to get its true purpose.[10] Thus if an executor named by an author had in fact qualified and thereafter resigned or died while in office, and no substitute executor had been provided for under the will, or if the named executor declined to serve, then under the construction urged by the plaintiff, the author's purpose to bequeath the renewal rights to his copyright would be defeated, as well as the congressional purpose to permit him, when he died leaving no wife or children, to make a bequest of the renewal copyright. This frustration of purpose becomes even more apparent when it is considered that under New York law, if no executor is qualified to act, the Surrogate must, upon application of an interested person, appoint an administrator c. t. a., who is duty-bound to carry out the terms of the will and has the same rights and powers and is subject to the same obligations as if he had been named executor in the will.[11]

The next of kin places great store on the reference in the above mentioned committee report that it was not intended to "permit the administrator to apply for the renewal". This argument yields upon analysis. "Administrator" there clearly refers to one appointed in the event of intestacy, and not to an "administrator c. t. a." who acts to enforce the terms of a will which has been admitted to probate and so carries out the wishes and instructions of the testator. Moreover, it ignores the balance of the sentence. The full quote in the report is, "It was not the intention to permit the administrator to apply for the renewal, but to permit the author who had no wife or children to bequeath by will the right to apply for the renewal".[12]

Finally, the sister contends that there is direct authority, and in this Circuit, holding that the right of renewal does not pass to an administrator c. t. a. The case advanced for this proposition is Silverman v. Sunrise Pictures Corporation, 2 Cir., 273 F. 909, 19 A.L.R. 289, Id., 2 Cir., 290 F. 804. A careful reading of the opinions does not support the claimed holding.[13] The case must be

7. Cf. Cabell v. Markham, 2 Cir., 148 F. 2d 737, 739; Holy Trinity Church v. United States, 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226.

8. See, N.Y. Surrogate's Court Act, § 225; Matter of Murphy, 144 N.Y. 557, 562, 39 N.E. 691; Robins v. McClure, 100 N.Y. 328, 340, 3 N.E. 663; Green v. Russell, 103 Mich. 638, 61 N.W. 885, 886; Scott v. Monks, 16 R.I. 225, 14 A. 860, 861.

9. National Labor Relations Board v. Lion Oil Co., 352 U.S. 282, 288, 77 S.Ct. 330, 1 L.Ed.2d 331.

10. Cf. De Sylva v. Ballentine, 351 U.S. 570, 578, 76 S.Ct. 974, where the Supreme Court in construing the very section here under consideration had no hesitancy in stating that the word "or" had been used as a careless substitute for "and" and accordingly held that the widow *and* children of a deceased author took as a class although a literal interpretation would have given the wife priority in view of the use of the disjunctive "or".

11. N.Y. Surrogate's Court Act, N.Y., §§ 133, 225.

12. H.R.Rep. No. 2222, 60th Cong., 2d Sess., p. 15.

13. Significantly, in deciding the first Silverman case the Court cited, and relied upon, White-Smith Music Pub. Co., v. Goff, 1 Cir., 187 F. 247 as authority for its statement—"The statute confers no right of renewal upon administrators" [273 F. 911]. Yet the White-Smith case did not involve any application for renewal by either an administrator c. t. a.

considered against the background of its own peculiar facts. While the second opinion does contain the statement "It [the right of renewal] cannot vest in the executor, because there is none; it cannot vest in an administrator d. b. n. c. t. a. for reasons pointed out by us before * * *" (290 F. at page 805), analysis of "the reasons pointed out by us before" shows that the reference to the non-vesting in the administrator d. b. n. c. t. a. was because he was not in office in the renewal year and so the issue was not in the case. Without detailing all the facts, the following significant circumstances appear:

First, the authoress, who was not survived by a widower or children specifically bequeathed her residuary estate "including copyright on my books" to all her next-of-kin in such shares as they would have taken under the laws of Alabama (where she was domiciled) had she died intestate.

Second, when the statutory renewal year began, the estate had already been distributed and the executors had been discharged and were functus officio.

Third, the administrator d. b. n. c. t. a. "who in point of fact was the surviving executor" (273 F. at page 912) had not been appointed, and so had not applied for renewal of the copyright, until long after the statutory year of renewal had passed. As the Court stated "When the time for action came, the only person or persons in being who could under the statute apply were the next-of-kin, and they did act in the premises." 290 F. 805.

Fourth, whether or not there was a will disposing of the copyrights, whether or not an executor or administrator c. t. a. was in office, the next-of-kin were entitled either under the will or in the event of intestacy, to the rights of renewal. In this connection the Court noted that its holding was fortified by the fact that under the law of the State of Alabama "where there are no debts, the heirs and next of kin may act directly in respect of any property right originating in their decedent, without the intervention of letters either testamentary or of administration."

It is against the foregoing factual background that the Court's statement that the right of renewal "cannot vest in an administrator d. b. n. c. t. a. for reasons pointed out by us before", must be considered. So viewed it is clear it was unnecessary to the Court's holding and is purely dictum. The case presented no issue as to whether Congress intended to deny an author the right to bequeath renewal rights, if he did not name an executor and the terms of his will were being administered by an administrator c. t. a.

I am of the opinion that upon the facts of the present case the right of renewal was vested in the administrator c. t. a. and only through so holding can the purpose and intent of the renewal section of the Copyright Act be achieved.

This conclusion however is not dispositive of the case. The administrator c. t. a. in exercising the right of renewal did so on behalf of those entitled to receive the royalties which might become due thereunder and this poses the next question. Who is entitled to the benefits of the renewed copyright—the sister as the sole surviving next of kin or the Town of Bechari, Lebanon, under the will? Here the contention is that under the statute the sole right given to an author who is not survived by a spouse or children is a testamentary privilege

or an administrator. It concerned an application for renewal by a "proprietor" and the Court specifically noted that the record did not disclose whether or not the author was living at the time the application for renewal was made by the proprietor. The Court held that a copyright could not be renewed by a "proprietor".

So too Danks v. Gordon, 2 Cir., 272 F.

821, while it seemingly contains the proposition advocated by plaintiff cannot be considered as supporting authority. In that case, the widow and children were alive at the time of the author's death and had the sole right to renew which they exercised. Therefore, no right of renewal could be asserted by any executor named in a will or by any administrator c. t. a.

simply to name an executor to apply for renewal. It is urged that once the renewal is obtained by a designated executor he holds the copyright in trust solely for the next of kin of the decedent and not for the benefit of any designated beneficiary or as part of the general estate. To buttress this contention the sister contrasts § 28 with § 24, the renewal section, and emphasizes that the former states "Copyright secured under this title * * * may be bequeathed by will", whereas the latter is silent on the right of an author to bequeath renewal copyrights. This contention, as narrow as it is legalistic, disregards that portion of § 28 which refers to "Copyright secured under this *title*" which of course is sufficiently all-inclusive to encompass renewal as well as original copyrights. The contended for construction would deprive an author, if he died without surviving spouse or children, of the right to dispose of renewal copyrights, contrary to congressional intent.

If the purpose of § 24 was simply to permit an author to name an executor to exercise the right of renewal and not to grant the author the right to bequeath the usufruct of the renewed copyright to such beneficiaries as he might designate, then there was no reason for the interposition of the executor; the statute could have achieved that purpose by providing that if no spouse or child be living, the right of renewal then passed to the next of kin.

Thus under the statute and controlling authority there can be no question but that an author has the right to bequeath copyright renewals.[14]

This brings us to the final question—whether the testator disposed by his will of the copyright renewals.[15]

The individual plaintiff argues that he did not and that the only bequest made to the Town of Bechari under Paragraph 4 of the will is of the original copyright and further that the construction of that paragraph by the decree of the Surrogate's Court, New York County, is so limited. Collaterally, she urges that since the will makes no disposition of the renewals, the author died intestate with respect thereto and so the renewal rights and royalties pass to her as the next of kin.

I am of the contrary view—that a fair reading of Paragraph 4 expresses the testator's intention to bequeath all rights with respect to the copyrights, original and renewal, to his home town of Bechari. The modifying clause " * * * which copyrights I understand can be extended upon request by my heirs for an additional period of twenty-eight years after my death", manifests an awareness by the testator that renewal copyrights could be obtained and a purpose that these be included in the bequest to his home town.

The alternative suggestion by the next of kin that the clause reflects a purpose that "they were to exercise and receive the renewal copyright"—in other words that it was a bequest to her as the "heir", does violence to ordinary language. There are no words of bequest in Paragraph 4 which suggest that the town was to receive only the original copyrights and that upon their extension they would pass to the heirs.

The foregoing shall constitute the Court's findings of fact and conclusions of law.

Decree to enter accordingly.

14. Fox Films Corp. v. Knowles, 261 U.S. 326, 43 S.Ct. 365, 67 L.Ed. 680.

15. The law to be applied in deciding testamentary matters is that of New York State. Two principles are well established: (1) that the testator's intention must be carried out; In re Butler's Will, 1 A.D.2d 548, 151 N.Y.S.2d 866, 869; and (2) there is a presumption that a testator did not intend to die intestate as to any portion of his property; In re Osterhoudt's Will, Sur., 118 N.Y.S.2d 900.